NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| KRAFT FOODS, INC. | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 09-3407 (WHW) |
| | : | |
| TRANSPORTATION MADE SIMPLE, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff Kraft Foods, Inc. ("Kraft") moves for default judgment against Defendant Transportation Made Simple, Inc. ("TMS"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. The motion is granted.

**FACTS AND PROCEDURAL BACKGROUND**

Kraft is a Virginia corporation with an office in Tarrytown, New York. (Am. Compl. ¶ 1.) TMS is a New Jersey corporation with a principal place of business in Fords, New Jersey. (Am. Compl. ¶ 2.) On July 8, 2009, Kraft filed a Complaint against TMS alleging that TMS breached certain duties and obligations to Kraft, and that, as a result, TMS owed Kraft $54,446.03 in damages. TMS was served with process on July 23, 2009. TMS did not appear in this action or answer the Complaint. On December 9, 2009, Kraft moved for default judgment against TMS. On December 11, 2009, the Clerk of Court entered default against TMS.

**NOT FOR PUBLICATION**

On January 20, 2010, this Court issued an Order directing Kraft to file an Amended Complaint setting forth in greater detail the factual basis for Kraft's cause of action against TMS, the nature of this Court's subject matter over the action and personal jurisdiction over the parties, and the propriety of venue in this District. The January 20, 2010 Order also directed Kraft to file an affidavit detailing the basis for the amount of damages Kraft is seeking from TMS. On February 2, 2010, Kraft filed an Amended Complaint and an Affidavit of Damages.

The Amended Complaint alleges that, on August 20, 2007, Kraft and TMS executed a Bill of Lading,[1] under which TMS was to transport a shipment of Kraft food products from a Kraft facility in Norcross, Georgia to a Kraft facility in Kingston, Jamaica. (Am. Compl. ¶¶ 8-9, Ex. C.) The Bill of Lading lists the departure and arrival points for the food cargo, describes the cargo and its specifications, and is signed by TMS's agent ("Carrier's Agent"), Earl Bond. The Bill of Lading also contains a section entitled "KEEP TEMPERATURE," which reads "34 DEGREES [,] SEAL #0514310." (Am. Compl. Ex. C.)

The Amended Complaint further alleges that, on August 20, 2007, the cargo was loaded into a TMS vehicle and transported by Earl Bond, a TMS employee, to the port of Savannah, Georgia, where it was to be loaded onto a steamship bound for Jamaica. (Am. Compl. ¶¶ 11-12.) However, on August 21, 2007, when Mr. Bond arrived at the designated location at the Port of

---

[1] "bill of lading (layd-ing). A document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods; a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." Black's Law Dictionary (8th ed. 2004).

NOT FOR PUBLICATION

Savannah, "the mechanic who checked the container founds that the unit was set at 30°C (86°F), and refused to sign off on the drop off ticket." (Am. Compl. ¶¶ 11-12.)

Finally, the Amended Complaint alleges that, because of the temperature discrepancy, the steamship line that was to transport the cargo to Jamaica refused entry of the cargo; Mr. Bond then took the cargo to the TMS yard, and the cargo was eventually returned to Kraft. (Am. Compl. ¶¶ 13-14, Ex. D.)

Kraft alleges that, "[p]ursuant to the Bill of Lading (Exhibit C) the temperature of the goods was to be maintained at 34 degrees Fahrenheit (34°F) throughout the course of transportation," (Am. Compl. ¶ 12), and that, as established by a subsequent investigation conducted by Alpha Marine Surveyors, the cargo was damaged due to Mr. Bond's failure to maintain this temperature in the refrigerated container in which the cargo was transported. (Am. Compl. ¶¶ 15-16, Ex. D.) According to the report issued by Alpha Marine Surveyors, the refrigerated unit was "off temperature for a period of approximately 15 hours," possibly due to a "misunderstanding with reference to °F and °C," and, as a consequence of this temperature discrepancy, "the distribution specifications for dairy and meat items were exceeded well beyond any acceptable range." (Am. Compl. ¶ 16, Ex. D.)

Based upon these allegations, Kraft avers that TMS was "negligent and careless in [its] handling of [Kraft's] cargo and further breached and violated [its] duties and obligations as [a] common carrier[] and bailee" (Am. Compl. ¶ 17), and that, as a result, Kraft has suffered damages in the amount of $54,446.03. Kraft seeks to recover $54,446.03, plus interest at 3.25% from August 20, 2007 until December 7, 2009 in the amount of $4,128.23.

NOT FOR PUBLICATION

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). However, "the entry of a default judgment is disfavored because it prevents a plaintiff's claims from being decided on the merits." E.I. Du Pont de Nemours & Co. v. The New Press, Inc., 1998 WL 159050, at *2 (E.D. Pa. Mar. 16, 1998). The Third Circuit has clarified that, while "the entry of a default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." Hritz v. Woma Corp. at 1181 (citations omitted). See also E.I. Du Pont, 1998 WL 159050 at *2.

In deciding a motion for default judgment, a court should accept as true the well-pleaded allegations of the Complaint. Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C., Civ. No. 05-3452, 2008 U.S. Dist. LEXIS 63600 at *13 (D.N.J. July 31, 2008); Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C., Civ. No. 06-1581, 2007 U.S. Dist. LEXIS 41997, at *8 (D.N.J. June 8, 2007). However, the court must make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an independent determination" regarding questions of law. Days Inn at *11. Moreover, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to

**NOT FOR PUBLICATION**

ascertain the amount of damages due, including calculation based on figures contained in documentary evidence or affidavits.  Ramada at *13-14; Days Inn at *15-17.

**DISCUSSION**

*Jurisdiction and Venue*

Kraft argues that this Court possesses subject matter jurisdiction over this action pursuant to 49 U.S.C. § 14706 and 28 U.S.C. § 1337.  (Am. Compl. ¶¶ 5-6.)[2]  Section 1337 of Title 28 confers upon district courts original jurisdiction over civil actions arising under section 14706 of Title 49 when the amount in controversy exceeds $10,000.  28 U.S.C. § 1337(a).  Section 14706 of Title 49, entitled "Liability of carriers under receipts and bills of lading," reads:

> A carrier providing transportation or service subject to jurisdiction under subchapter I [motor carrier transportation] or III [freight forwarder service] of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported. . . .

49 U.S.C. § 14706(a)(1).  Because this action concerns liability for actual loss or injury to property for which a bill of lading was issued by a motor carrier, and because the amount in controversy exceeds $10,000, this Court possesses subject matter jurisdiction over the action.

Kraft argues that this court possesses personal jurisdiction over TMS because it is a corporation incorporated in New Jersey with its principal place of business in New Jersey.  (Am.

---

[2] The Amended Complaint states that this Court "has subject matter jurisdiction pursuant to 28 U.S.C. § 14706 and 28 U.S.C. § 1337."  (Am. Compl. ¶ 5.)  However, Kraft is presumably referring to section 14706 of Title 49, rather than Title 28, because the next paragraph of the Amended Complaint discusses 49 U.S.C. § 14706, and because 28 U.S.C. § 1337 specifically refers to 49 U.S.C. § 14706.

**NOT FOR PUBLICATION**

Compl. ¶ 2, Ex. A.)  Because TMS resides in New Jersey, the Court finds that it possesses personal jurisdiction over TMS.

Kraft also argues that venue is proper in this Court under 28 U.S.C. § 1391. (Am. Compl. ¶ 7.)  Under section 1391(b), a civil action brought under federal question jurisdiction may be brought in a judicial district where any defendant resides.  28 U.S.C. § 1391.  Because this action is brought under federal question jurisdiction and Defendant TMS resides in New Jersey, the Court finds that venue is proper in the district of New Jersey.

*Liability*

The crux of Kraft's allegations is that, because of the failure of TMS' employee to follow instructions – namely, Mr. Bond's failure to set the refrigerated unit at the proper temperature – Kraft's food cargo was spoiled and did not reach its ultimate destination in proper condition. Kraft alleges that, "[p]ursuant to the Bill of Lading (Exhibit C) the temperature of the goods was to be maintained at 34 degrees Fahrenheit (34°F) throughout the course of transportation."  (Am. Compl. ¶ 12).  The report issued by Alpha Marine Surveyors states that "[t]he drive signed a copy of the B/L [bill of lading] and a Kraft Foods Norcross Distribution Center Pallet Control Sheet – both have 34°F as the temperature." (Am. Compl. Ex. D.)  However, as noted, the Bill of Lading itself does not specify the unit of temperature measurement (Fahrenheit or Celsius), but simply states that the temperature is to be kept at "34 DEGREES."  (Am. Compl. Ex. C.)

Nevertheless, given that the transaction between Kraft and TMS was conducted in the United States, where use of Fahrenheit is standard, and given that TMS was hired to transport meat and cheese products – which would clearly need to be transported at a cold temperature

**NOT FOR PUBLICATION**

(e.g., 34°F, which is near freezing, rather than 30°C (86°F), which is quite warm) – it is reasonable to conclude that the use of Fahrenheit was understood in the Bill of Lading's "34 Degrees" specification.  That the refrigerated unit was not set to 34°C, but rather to 30°C, suggests that TMS' driver not only made a mistake regarding Fahrenheit and Celsius, but failed to follow the facially obvious instruction that the unit was to be set to "34 Degrees."

The Court accepts Kraft's allegations as true, and concludes that TMS failed to fulfill its obligations under the Bill of Lading to deliver Kraft's food cargo to the Port of Savannah in acceptable condition for transport to Jamaica.  TMS is liable for damages sustained by Kraft as a result of this failure.

*Damages*

Kraft alleges that it sustained damages in the amount of $52,890.89.  It attaches two invoices that would have been paid to it by Kraft Foods Jamaica Ltd. had the food products been properly delivered – one in the amount of $42,619.22 and the other in the amount of $10,271.67, for a total of $52,890.89. (Komsa Aff. ¶ 5, Ex. A.)[3]  It also attaches two invoices for costs relating to disposal of the damaged food cargo – one in the amount of $115.00 and the other in the amount of $1,454.00, for a total of $1,569.00. (Komsa Aff. ¶ 6, Exs. B-C.)[4]  The Court accepts these invoices as evidence of the amount of monetary loss sustained by Kraft and awards Kraft a total of $54,459.89 in damages.

---

[3]  Kraft states that the total for damaged products is $54,446.03.  The Court assumes that this figure is the result of a mathematical error in adding $42,619.22 and $10,271.67

[4] Kraft states that the total for disposal costs is $1,555.14.  The Court assumes that this figure is the result of a mathematical error in adding $115.00 and $1,454.00.

**NOT FOR PUBLICATION**

Kraft also seeks to "recover interest [on the damages amount] at the rate of 3.25% from August 20, 2007, for a total as of December 8, 2009 of $4,128.23." (Komsa Aff. ¶ 7.) Neither the Bill of Lading nor any other documents appear to contemplate the accrual of interest on damages sustained, and Kraft offers no basis for the existence or amount of the requested interest payments. Kraft also does not provide any information regarding its calculation of the interest amount. Nevertheless, the Court grants Kraft's request for interest in the amount of $4,128.23.

*Attorneys' Fees and Costs*

Kraft also seeks to recover litigation costs in the amount of $409.15 and includes an expense sheet detailing the costs included in this amount. Although Kraft's request does not strictly comply with the requirements of Local Rule 54.1, the Court nevertheless grants Kraft's request and awards it costs in the amount of $409.15.

**CONCLUSION**

Kraft's motion for default judgment is granted, and it is awarded $58,997.27, which is comprised of $54,459.89 in damages, $4,128.23 in interest, and $409.15 in costs.

It is on this 25th day of March, 2010:

ORDERED that Plaintiff Kraft Foods, Inc.'s Motion for Default Judgment is GRANTED.

ORDERED that Defendant Transportation Made Simple, Inc. pay Plaintiff Kraft Foods, Inc. $58,997.27.

**s/ William H. Walls**
United States Senior District Judge
